## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

**SHERRI YAX, BRYAN TRAYNOR,**
**and PATRICK DZAGULOUNES,**

**Plaintiffs,**

        **Case No. 03-72106**

**v.**

        **HONORABLE DENISE PAGE HOOD**

**UNITED PARCEL SERVICE and**
**LIBERTY MUTUAL INSURANCE CO.,**

**Defendants.**
_____/

## MEMORANDUM OPINION & ORDER GRANTING DEFENDANT UNITED PARCEL SERVICE'S MOTION TO DISMISS PLAINTIFF'S SECOND AMENDED COMPLAINT PURSUANT TO FEDERAL RULE OF CIVIL PROCEDURE 12(b)(6)

**I.**      **BACKGROUND AND PROCEDURAL HISTORY**

Plaintiffs assert their worker's compensation benefits were wrongfully terminated and brought suit on May 29, 2003, pursuant to the federal Racketeer Influence and Corrupt Organization Act ("RICO"), 18 U.S.C. §1961, et seq., and the Worker's Disability Compensation Act of 1969 under M.C.L. §418.101, et seq. Plaintiffs alleged violations of RICO, wrongful denial of benefits, and retaliation for filing a worker's compensation claim. Plaintiffs filed their First Amended Complaint on June 17, 2003, adding a party.

On July 25, 2003, Defendants filed a Motion to Dismiss. In addition to responding to Defendants' Motion, Plaintiffs filed a separate Motion to Amend on October 30, 2003. After conducting a hearing on both Motions, the Court issued an Order on March 31, 2004. In its Memorandum Opinion & Order Re: Defendants, United Parcel Service's, & Liberty Mutual Insurance Company's, Motion to Dismiss & Plaintiffs' Motion to Amend Complaint, the Court: (1)

dismissed Count II of Plaintiffs' Complaint, alleging wrongful termination of benefits against Defendant UPS; (2) dismissed Count III, retaliation, against Defendant UPS; (3) dismissed Count I, RICO, against Defendant UPS pending amendment by Plaintiffs; (4) dismissed Counts I, II, and III against Defendant Liberty Mutual; (5) dismissed Defendant Liberty Mutual from the case entirely; (6) granted Plaintiffs' Motion to Amend as to Count I against UPS only; and (7) denied Plaintiffs' Motion to Amend entirely with respect to Defendant Liberty Mutual.  (Mar. 31, 2004 Mem. Op. & Ord. at 25-26.)  The Court specified, "Plaintiff's Complaint is not pled sufficiently to meet the 'particularity' requirement; and Plaintiffs' RICO claim must fail absent amendment of the Complaint."  (Id. at 15.)  Despite this threshold deficiency, the Court went on to analyze Plaintiffs' RICO claim.  The Court concluded, "[s]ince Plaintiffs' Complaint not only does not demonstrate reliance, but does not indicate that any of the alleged fraudulent communications were communicated directly or indirectly to the Plaintiffs, Plaintiffs' RICO cause of action must fail absent amendment of the Complaint."  (Id. at 19.)

On April 23, 2004, Plaintiffs filed their Second Amended Complaint against both Defendant UPS and Defendant Liberty Mutual.  Plaintiffs assert a RICO claim against Defendant UPS, and an Intentional Infliction of Emotional Distress ("IIED") claim against both Defendants.

This matter is before the Court on Defendant UPS' Motion to Dismiss Plaintiff's Second Amended Complaint Pursuant to Federal Rule of Civil Procedure 12(b)(6) or Alternatively to Stay Proceedings, filed May 4, 2004.  Defendant Liberty Mutual filed a Notice of Concurrence in Defendant UPS' Motion on May 26, 2004.  Defendant UPS' Motion to Dismiss claims Plaintiffs: (1) failed to allege a fraudulent statement; (2) cannot establish proximate cause under RICO; and (3) cannot support a claim for IIED.  Plaintiffs filed their Response on May 25, 2004, to which

2

Defendant UPS replied on June 9, 2004. For the reasons set forth below, the Court grants Defendant UPS' Motion to Dismiss.

## II.    STATEMENT OF FACTS

Plaintiff Yax received worker's compensation benefits for an alleged pre-existing back injury from October 2001 through September 2002. Plaintiff Yax alleges Defendant Liberty Mutual completed a Notice of Dispute and submitted it to the Michigan Worker's Compensation Bureau on September 17, 2002. (2d Am. Compl. at 10.) The Notice of Dispute lists the alleged reason for dispute as "[n]o medical evidence of continued disability." (Id.) Plaintiff Yax alleges this Notice was fraudulent because Defendant Liberty Mutual possessed reports from multiple doctors stating Plaintiff Yax was indeed disabled. (Id.) Plaintiff Yax further alleges Defendant UPS acted in concert with Defendant Liberty Mutual, and alleges Defendant Liberty Mutual was Defendant UPS' agent during this process. (Id.)

Plaintiff Traynor was employed with Defendant UPS loading trucks. Plaintiff Traynor received worker's compensation benefits from August 20, 2002 until March 12, 2003, for a disabling back injury. In the Second Amended Complaint, Plaintiff Traynor claims Defendant Liberty Mutual provided a Notice of Dispute to the Michigan Worker's Compensation Bureau on March 12, 2003. (Id. at 20.) Plaintiff Traynor alleges this Notice was fraudulent because the stated basis for dispute was "the 2/3/03 Dr. W. Higginbotham IME." (Id.) Plaintiff Traynor further alleges that "Dr. Higginbotham's report did not give Liberty any basis for termination of benefits." (Id.) Plaintiff Traynor concludes Defendant UPS was "informed of the decision of [Defendant] Liberty [Mutual], and approved them or let them stand." (Id.) Plaintiff Traynor also claims Defendant Liberty Mutual acted as an agent for Defendant UPS.

Plaintiff Dzagulones was employed as a UPS driver. Plaintiff Dzagulones claims he sustained nerve damage in his arm due to lifting boxes in September 1999. Plaintiff Dzagulones received worker's compensation benefits from November 1999 until June 2003. Plaintiff Dzagulones also points to an allegedly fraudulent Notice of Dispute filed by Defendant Liberty Mutual on March 13, 2002. (Id. at 29.) The Notice stated Defendant Liberty Mutual was "[d]isputing ttd based on 5/28/02 IME." (Id.) Plaintiff alleges the May 28, 2002 IME report "was false and the product of a conspiracy with defendant [UPS] and its agent Liberty Mutual to wrongfully deprive plaintiff and others of their benefits." (Id.)

## III.   STANDARD OF REVIEW

The Sixth Circuit held in *Windsor v. The Tennessean*, 719 F.2d 155 (6th Cir. 1983), that the standard of review "when evaluating a motion to dismiss brought pursuant to rule 12(b)(6), [is to regard] the factual allegations in the complaint . . . as true." *Id.* at 158 (quoting *Walker Process Equipment, Inc. v. Food Machinery & Chemical Corp.,* 382 U.S. 172, (1965)). The *Windsor* court went on to state, "[t]he claim should not be dismissed unless it appears beyond doubt that plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Id.* (citing *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957)).

The standard of review under Federal Rule of Civil Procedure 12(b)(6) is liberal. "'A complaint need not set down in detail all the particularities of a plaintiff's claim,' but must simply 'give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests.'"*Gazette v. City of Pontiac*, 41 F.3d 1061, 1064 (6th Cir. 1994). It is plain that, although liberal, the standard does require a plaintiff to plead more than bare legal conclusions. *See Morgan v. Church's Fried Chicken*, 829 F.2d 10, 12 (6th Cir. 1987) (liberal Rule 12(b)(6) review is not

4

afforded legal conclusions and unwarranted factual inferences); *Ana Leon T. v. Federal Reserve Bank*, 823 F.2d 928, 930 (6th Cir. 1987) (per curiam) (mere conclusions are not afforded liberal Rule 12(b)(6) review. "In practice, a . . . complaint must contain either direct or inferential allegations respecting all the material elements to sustain a recovery under some viable legal theory." *Allard v. Weitzman (In re DeLorean Motor Co.)*, 991 F.2d 1236, 1240 (6th Cir. 1993) (internal quotation marks omitted) (quoting *Scheid v. Fanny Farmer Candy Shops, Inc.*, 859 F.2d 434, 436 (6th Cir. 1988)).

The district court must construe the complaint in a light most favorable to the plaintiff, accept all of the factual allegations as true, and determine whether the plaintiff undoubtedly can prove no set of facts in support of his claims that would entitle him to relief. *Allard*, 991 F.2d at 1240; *Mayer v. Mylod*, 988 F.2d 635, 638 (6th Cir. 1993). When an allegation is capable of more than one inference, it must be construed in the plaintiff's favor. *Allard*, 991 F.2d at 1240; *Mayer*, 988 F.2d at 638. Hence, a judge may not grant a Rule 12(b)(6) motion based on a disbelief of a complaint's factual allegations. *Allard*, 991 F.2d at 1240; *Lawler v. Marshall*, 898 F.2d 1196, 1199 (6th Cir. 1990).

## IV.   APPLICABLE LAW & ANALYSIS

### A.   Amendment of Plaintiffs' Complaint

Rule 15(a) of the Federal Rules of Civil Procedure governs the amendment of a complaint. It provides, in pertinent part, as follows:

> A party may amend his pleading once as a matter of course at any time before a responsive pleading is served or, if the pleading is one to which no responsive pleading is permitted and the action has not been placed upon the trial calendar, he may amend it at any time within 20 days after it is served. Otherwise a party may amend his pleading only by leave of court or by written consent of the adverse party; and leave shall be freely given when justice so requires.

5

2:03-cv-72106-DPH   Doc # 45   Filed 05/31/05   Pg 6 of 13   Pg ID 480

The United States Supreme Court, in *Forman v. Davis*, 371 U.S. 178 (1962), recognized this rule should be liberally construed and stated:

> If the underlying facts or circumstances relied upon by plaintiff may be a proper subject of relief, he ought to be afforded an opportunity to test his claim on the merits. In the absence of any apparent or declared reason such as undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of amendment, etc. the leave sought should, as the rules require, be "freely given."

371 U.S. at 182.

With these standards in mind, the Court's March 31, 2004 Memorandum Opinion & Order allowed Plaintiffs to specifically amend Count I of their Complaint as to Defendant UPS only. The Court did not grant leave to amend the Complaint generally, and provided no leave to amend as to Defendant Liberty Mutual whatsoever. Therefore, the amendment to include an IIED claim is denied. The portion of the Second Amended Complaint alleging IIED against Defendants is dismissed.

### B.    "Revised Second Amended Complaint"

Plaintiffs' Response contained an attachment entitled "Revised Second Amended Complaint." (Pls.' Resp., Ex. 1.) This document would, in effect, constitute a Third Amended Complaint. As noted above, Rule 15 requires leave of the court before a plaintiff may file an amended complaint. *See* Fed. R. Civ. P. 15(a). The Court did not grant Plaintiffs leave to file a Third Amended Complaint, and Exhibit 1 of Plaintiffs' Response is stricken.

### C.    RICO

A violation of 18 U.S.C. § 1962(c), the provision of RICO upon which Plaintiffs rely to support their claim, consists of the following elements: "(1) conduct (2) of an enterprise (3) through

a pattern (4) of racketeering activity." *Sedima, S.P.R.L. v. Imrex Co.*, 473 U.S. 479, 496 (1985). "'Racketeering activity' is defined in 18 U.S.C. § 1961(1)(B) as including any act 'indictable' under certain enumerated federal criminal statutes, including 18 U.S.C. § 1341, which makes mail fraud a criminal offense, and 18 U.S.C. § 1343, which makes wire fraud a crime." *Schreiber Distributing Co. v. Serv-Well Furniture Co.*, 806 F.2d 1393, 1399 (9th Cir. 1986).

To maintain their RICO action, Plaintiffs must show that each element of mail fraud or wire fraud has been committed by Defendants. "To allege a violation of the mail fraud statute, it is necessary to show that (1) the defendants formed a scheme or artifice to defraud; (2) the defendants used the United States mails or caused a use of the United States mails in furtherance of the scheme; and (3) the defendants did so with the specific intent to deceive or defraud." *Schreiber*, 806 F.2d at 1399–1400. "Similarly, a wire fraud violations [sic] consists of (1) the formation of a scheme or artifice to defraud (2) use of the United States wires or causing a use of the United States wires in furtherance of the scheme; and (3) specific intent to deceive or defraud." *Id.* at 1400. Plaintiffs cannot maintain a civil RICO claim against Defendants absent evidence that Defendants made misrepresentations or omissions of material fact to Plaintiffs, and evidence that Plaintiffs relied on those misrepresentations or omissions to their detriment. *See Bender v. Southland Corp.*, 749 F.2d 1205, 1216 (6th Cir. 1984). *See also Blount Financial Svcs., Inc. v. Walter E. Heller & Co.*, 819 F.2d 151, 152 (6th Cir. 1987) (holding that the plaintiff must plead with particularity the false statements of fact made by the defendants to the plaintiffs and the facts showing that the plaintiff relied on those statements to its detriment); *Schreiber*, 806 F.2d at 1400 (noting that the plaintiff properly pleaded that the defendants had made misrepresentations to the plaintiff and that the plaintiff had detrimentally relied on those statements). The defendant must make a false statement

7

or omission of fact to the plaintiff to support a claim of wire fraud or mail fraud as a predicate act for a RICO claim.

"In order to establish 'racketeering activity' Plaintiffs must allege a predicate act," under 18 U.S.C. § 1961(1). *Kenty v. Bank One, Columbus, N.A.*, 92 F.3d 384, 389 (6th Cir. 1996). Plaintiffs alleged mail and wire fraud. Rule 9(b) of the Federal Rules of Civil Procedure provides that in a complaint alleging fraud, "the circumstances constituting fraud . . . shall be stated with particularity." Fed. R. Civ. P. 9(b). The purpose of Rule 9(b) is to provide fair notice to the defendant so as to allow him to prepare an informed pleading responsive to the specific allegations of fraud. *Michaels Bldg. Co. v. Ameritrust Co., N.A.*, 848 F.2d 674, 679 (6th Cir. 1988). The Sixth Circuit reads the requirement of Rule 9(b) "liberally, . . . requiring a plaintiff, at a minimum, to allege the time, place, and content of the alleged misrepresentation on which he or she relied; the fraudulent scheme; the fraudulent intent of the defendants; and the injury resulting from the fraud." *Coffey v. Foamex L.P.*, 2 F.3d 157, 161–62 (6th Cir. 1993) (internal quotation marks and citation omitted).

This liberal reading stems from the influence of Rule 8, which "requires a 'short and plain statement of the claim,' and calls for 'simple, concise, and direct' allegations." See *id.*; *Michaels Bldg. Co.*, 848 F.2d at 679 (quoting Fed. R. Civ. P. 8(a), (e)). Even against the Rule 8 "backdrop admonition of simplicity in pleading," *id.*, "allegations of fraudulent misrepresentation[s] must be made with sufficient particularity and with a sufficient factual basis to support an inference that they were knowingly made." *Coffey*, 2 F.3d at 162 (internal quotation marks and citation omitted).

As a preliminary matter, Plaintiffs' RICO claim against Defendant Liberty Mutual is not allowed, as per the Court's March 31, 2004 Order. With respect to Defendant UPS, Plaintiffs show

no alleged false statements with time, place, and content.  Plaintiff Yax's benefits were terminated due to the determination that no medical evidence of a continued disability existed.  This statement is not false, as Defendants did terminate Plaintiff Yax's benefits and claimed it was based on no medical evidence of continued disability.  Plaintiff Traynor claims fraud based on the Notice of Dispute filed and Dr. Higginbotham's IME report.  Plaintiff Traynor cannot demonstrate falsehood because Defendant UPS did dispute the temporary total disability based on Dr. Higginbotham's IME report.  Plaintiff Dzagulones' claims suffer from the same failing: Defendant UPS did dispute the temporary total disability based on the doctor's report.  Plaintiff Dzagulones also alleges Defendants conspired  to produce a deliberately misrepresented IME report, but he presents no evidence supporting the existence of the alleged conspiracy.  A bare allegation of falsity is not enough to sustain a claim in the face of a Rule 12(b)(6) motion; nor can a bare allegation of conspiracy survive a motion to dismiss.

Plaintiffs fail to show Defendants' statements were intended to mislead Plaintiffs. Defendants claim the statements were made to the Worker's Compensation Board, and only "incidentally" to Plaintiffs.  Because they were not aimed directly at Plaintiffs, Defendants argue the statements could not have been intended to mislead Plaintiffs.  Plaintiffs argue that the Court cannot examine the intent of Defendant UPS in a Rule 12(b)(6) motion, and must instead accept Plaintiffs' allegations of intent to mislead as true.  However, the only reason IMEs are taken and reports sent to the Worker's Compensation Board is to allow the Board to make a decision about disability payments.  Information about the disputes and the IMEs was not provided to mislead Plaintiffs but to put them on notice of Defendant UPS disputing their disability and giving Defendant UPS' reason for dispute: the IME reports of no disability.  The truthfulness of the IME reports was

9

a question of fact previously determined by the Worker's Compensation Board.

Defendants' alleged misrepresentations cannot be demonstrated to have been intended for Plaintiffs' reliance – to induce them to part with their worker's compensation rights. The statements may have been a scheme perpetrated on the Worker's Compensation Board to deny further benefits, but the statements cannot be said to have been directed to induce Plaintiffs to give up their worker's compensation rights, as the filing of the Notice of Dispute of worker's compensation disability by Defendant UPS demonstrates.

With respect to proximate cause and justifiable reliance, Plaintiffs claim reliance in that they paid their own medical bills which Defendants would have paid as well as hiring an attorney to obtain their benefits. In the alternative, Plaintiffs claim their Complaint is properly pled and that they are not required to prove justifiable reliance under 18 U.S.C. § 1512. The Court finds Plaintiffs must necessarily prove justifiable reliance because they must demonstrate predicate acts as an element of their claim.

Plaintiffs argue in favor of invoking Federal Rule of Civil Procedure Rule 11(b)(3), regarding the use of mail or wire merely as a tool for achievement of fraud, to make Rule 9(b) inapplicable in this instance. Plaintiffs cite *Rotella v. Wood*, 528 U.S. 549 (2000), in support of this proposition. In *Rotella*, the Supreme Court considered whether the accrual of a patient's RICO action was delayed until he actually discovered the alleged pattern of racketeering activity. The Court held accrual of such an action is not delayed; the relevant claims period begins to run from the time the plaintiff discovers the injury. *Id.* at 558-59. *Rotella* also held that "while we assume that Rule 9(b) will exact some cost" on a plaintiff, enforcing Rule 9(b) in its most stringent form "ignores the flexibility provided by Rule 11(b)(3), allowing pleadings based on evidence *reasonably*

10

*anticipated* after further investigation or discovery." *Id.* at 560 (emphasis added). Plaintiffs cannot show a reasonable anticipation of evidence supporting their claims following discovery based on pure speculation alone. While *Rotella* notes the interplay between Rule 9 and Rule 11, it does not eliminate the standards of Rule 9(b). Even with a reduced burden, Plaintiffs cannot survive dismissal of their claims.

Plaintiffs also assert Rule 9(b) is inapplicable where the allegedly fraudulent communications are in the hands of Defendants. In support of this contention, Plaintiffs rely on *Abels v. Farmers Commodities Corp.*, 259 F.3d 910 (8th Cir. 2001). Notwithstanding whether *Abels* is applicable under Sixth Circuit precedent, *see* Mar. 30 Mem. Op. & Ord. at 12 (describing Sixth Circuit Pleading requirements), the Court finds *Abels* is distinguishable from the present matter in at least two respects. First, the plaintiffs in *Abels* actually pled particularized fraudulent communications in their complaint. The same cannot be said of Plaintiffs in any of their various pleadings submitted to the Court. Second, Plaintiffs have already gone through the worker's compensation process. *Abels* does not provide Plaintiffs with the ability to meet the requirements of Rule 9(b).

The Court believes Plaintiffs present a circular argument since they allege the fraud was the submissions to the Worker's Compensation Board and to themselves. Alternatively, the alleged scheme to defraud was the communication via medical reports between Defendants and the doctors. Yet Plaintiffs in fact claim Defendants provided false and misleading information to the Worker's Compensation board. Plaintiffs have not delineated "with adequate particularity in the body of the complaint, the specific circumstance constituting the overall fraudulent scheme." (Pls.' Resp. at 15.)

### D.      IIED

The Court finds Plaintiffs are not entitled to further leave to amend their Complaint to allege

11

IIED.  In order to prove an intentional infliction of emotional distress claim, plaintiff must prove (1) extreme and outrageous conduct on the part of the defendant; (2) intent or recklessness; (3) causation, and (4) severe emotional distress. *Pratt v. Brown Mach. Co.*, 855 F.2d 1225, 1239 (6th Cir. 1988);  *Roberts v. Auto-Owners Ins*., 422 Mich. 594, 602; 374 N.W.2d 905 (1985); *Haverbush v. Powelson*, 217 Mich. App. 228, 234; 551 N.W.2d 206 (1996);  *Linebaugh v. Sheraton Michigan Corp*., 198 Mich. App. 335, 342; 497 N.W.2d 585 (1993).   Regarding the first element of an emotional distress claim, the Michigan Court of Appeals has articulated the following standard for determining whether conduct is extreme and outrageous:

> In reviewing such a claim, it is initially for the court to determine whether the defendant's conduct reasonably may be regarded as so extreme and outrageous as to permit recovery. However, where reasonable men may differ, it is for the jury, subject to the control of the court, to determine whether, in the particular case, the conduct has been sufficiently extreme and outrageous to result in liability.

*Doe v. Mills*, 824, 212 Mich. App. 73, 91-92; 536 N.W.2d 824 (1995) (citations omitted); *See also, Linebaugh v. Sheraton Michigan Corp*., 198 Mich. App. at 342-43 (stating that whether conduct is sufficiently outrageous and extreme to render one liable for the intentional infliction of emotional distress is a matter for determination by the trier of fact).

The Court finds Plaintiffs are unable to establish extreme and outrageous conduct as defined in *Roberts* and as a matter of law.   Plaintiffs have still not pled sufficient facts under the aforementioned IIED requirements or *Hailes v. Liberty Mutual Ins. Co.*, 1999 WL 33326762 (Mich. App. Dec. 28, 1999).  Nothing described by Plaintiffs rises to the level of sufficiently outrageous conduct.

**V.    CONCLUSION**

For the foregoing reasons, Defendant's Motion to Dismiss is granted.

12

Accordingly,

IT IS ORDERED that Defendant UPS' Motion to Dismiss Plaintiff's Second Amended

Complaint Pursuant to Federal Rule of Civil Procedure 12(b)(6) or Alternatively to Stay Proceedings

**[Docket No. 27, filed May 4, 2004]** is GRANTED.

IT IS FURTHER ORDERED that Plaintiffs' Second Amended Complaint is DISMISSED

with prejudice.


    ___/s/ Denise Page Hood_____
DENISE PAGE HOOD
UNITED STATES DISTRICT JUDGE

DATED:__May 27, 2005_____

13